621 A.2d 1054

**BANKERS TRUST COMPANY, Trustee for American Housing Trust, Appellant**

v.

**John E. FOUST.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1993.

Filed March 23, 1993.

90

Valentina G. Viletto, Philadelphia, for appellant.

Henry J. Sommer, Philadelphia, for appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

CIRILLO, Judge.

This is an appeal of an order entered by the Court of Common Pleas of Philadelphia County sustaining preliminary objections and dismissing the complaint in ejectment. We reverse.

█ Appellant Bankers Trust Company (mortgagee), through its assignor, entered into an installment contract for the sale of real estate with appellee John E. Foust (mortgagor). The mortgagor failed to make timely payments under the mortgage and the mortgagee sent notice of its intention to terminate the installment contract and take possession of the

real estate pursuant to the Pennsylvania Act of 1974, No. 6, 41 P.S. § 101 *et seq.* (the Act or Act 6). The mortgagor filed preliminary objections to the complaint in ejectment and alleged that the notice sent to him was defective pursuant to section 403 of the Act. The trial court found that notice was defective and dismissed the complaint based on the lack of subject matter jurisdiction.[1]

We are asked to consider the following issues:

1. Whether Act 6 notice which conforms with the notice prescribed by the Secretary of Banking properly complies with the requirements of section 403?

2. Whether section 403 requires a mortgagee to provide all necessary formulas, to enable a debtor to calculate interest, fees and other charges that accrue from the date of default up to the date of curing the default, in the Act 6 notice?

3. Whether section 403 requires a mortgagee to include in the Act 6 notice that there is an *absolute* right to have a buyer assume the mortgage?

Act 6 is essentially a comprehensive interest and usury law with numerous functions. *Beckett v. Laux,* 395 Pa.Super. 563, 577 A.2d 1341 (1990) (citation omitted). The Act's provisions regulating loan interest and notice of foreclosure for owners of relatively modest homes was intended to afford homeowners who are in dire economic straits a measure of protection from overly zealous "residential mortgage" lenders. *Continental Bank v. Rapp,* 336 Pa.Super. 160, 485 A.2d 480 (1984). The installment plan contract at issue in the instant case qualifies as a residential mortgage and accordingly, the mortgagor was entitled to the notice protections afforded under the Act.[2] *Anderson Contracting Co. v. Daugherty,*

1. Proper notice requirements pursuant to Act 6 are a prerequisite to the court's subject matter jurisdiction over the mortgagee's foreclosure action. *Philadelphia Housing Authority v. Barbour,* 405 Pa.Super. 140, 592 A.2d 47 (1991), *allocatur granted,* 528 Pa. 631, 598 A.2d 284 (1991).

2. For a transaction to qualify as a residential mortgage under the Act there must be an obligation to pay an original bona fide principal amount of $50,000.00 or less, and it must be evidenced by a security document, secured by a lien upon real property in Pennsylvania, and contain two or fewer residential units or on which two or fewer

274 Pa.Super. 13, 417 A.2d 1227 (1979), *appeal dismissed,* 492 Pa. 630, 425 A.2d 329 (1980).

■ Before a mortgagee may proceed to foreclose or accelerate payment under the mortgage, section 403 provides that notice be given of the mortgagee's intention and that the mortgagor be provided at least thirty days to cure the default. 41 P.S. § 403(a). Section 403 provides that the notice of intention by the mortgagee must consist of the following:

(b) Notice ... shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.

(c) The written notice shall clearly and conspicuously state:

(1) The particular obligation or real estate security interest;

(2) The nature of the default claimed;

(3) The right of the debtor to cure the default as provided in section 404 of this act *and exactly what performance including what sum of money if any, must be tendered to cure the default;*

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

41 P.S. § 403(b), (c) (emphasis added). This court has previously considered Foust's third issue presented in *N.Y. Guardian Mortg. v. Dietzel,* 362 Pa.Super. 426, 524 A.2d 951 (1987). In *N.Y.,* this court found that a notice of foreclosure under section 403(c)(6) of the Act did not require the mortgage lender to specifically include a statement that there was an

residential units are to be constructed. 41 P.S. § 101. Both parties to the action agree that resolution of the instant matter is to be determined under the provisions of the Act.

*absolute* right to have the buyer assume the mortgage. This finding was premised upon the plain and common meaning to be given to the words in the Act. Instantly, it is the emphasized portion of subsection (3) that is the focus of this appeal. We find that, as was the case in *N.Y.,* Foust's contentions pertaining to subsection (3) are likewise contrary to the plain meaning of the Act and are without merit.

Here, the trial court held that section 403(c)(3) not only required a mortgagee to provide notice of the amount of the monthly payment, the months this amount was not paid, the amount of late charges that have accrued since default and the total amount presently due as of the date of notice, but also required the mortgagee to provide a daily accounting of late charges, the day of the month that late charges accrued, the day on which additional monthly payments began to accrue, and the formulas which the mortgage company used to compute the late charges. In essence, the trial court is requiring the mortgagee to include the precise formula for calculating all charges from the date of default, up to the date of notice, and the amount of charges that will accrue daily up to and ending on the thirtieth day curing period.

The lender argues that it provided proper notice under section 403 and further relies on the model notice of foreclosure promulgated and provided by the Secretary of Banking. The Act provides that the Secretary of Banking shall prescribe regulations to carry out the purposes of the Act. 41 P.S. § 601. Pursuant to section 601 and the authority located in 7 P.S. § 6020–166, the Secretary issued regulation 10 Pa.Code § 7.4 setting forth a model form of notice to be used by lenders. The mortgagor argues that the model form is discretionary and therefore contrary to the full disclosure intended by the legislature in passing the Act. Where, as here, there is a conflict between a statute and a regulation, the regulation must give way. *See Commonwealth v. DeFusco,* 378 Pa.Super. 442, 549 A.2d 140 (1988), *appeal dismissed,* 523 Pa. 425, 567 A.2d 1043 (1990); *Lookenbill v. Garrett,* 340 Pa.Super. 435, 490 A.2d 857 (1985). The trial court agreed and found that is was not constrained to follow an improperly

conceived administrative regulation which contradicts the statute under which it was promulgated. *See Consulting Engineers v. Licensure Bd.*, 522 Pa. 204, 560 A.2d 1375 (1989).

The impetus for the trial court's decision comes from a vast number of Philadelphia County decisions which have evolved since 1979. The trial court and the appellee also rely on several Eastern District of Pennsylvania bankruptcy decisions that have held that a mortgagor's failure to provide the formula to the debtor to calculate the "exact" amount due to cure the default violated the Act. *See In re Mosley,* 85 B.R. 942 (1988); *In re Rowe,* 110 B.R. 712 (1990); *Werts v. FNMA,* 48 B.R. 980 (1985). This precedent offers no guidance as these bankruptcy decisions garnered their understanding and interpretation of existing Pennsylvania case law from the Philadelphia Court of Common Pleas decisions.

It is highly impractical, especially when you consider that this class of homeowners requires extra protection due to its status, that the lender be required to provide complex formulas with fluctuating variables to help them determine the amount owed to cure the default on any given day over the following thirty days. Accordingly, we disagree with the trial court that the form promulgated by the Secretary of Banking contradicts the provisions of the Act and that notice was defective.

■■■■ Words of a statute must be construed according to their common and accepted usage. 1 Pa.C.S.A. § 1903; *Fireman's Fund Ins. v. Nationwide Mut. Ins.*, 317 Pa.Super. 497, 464 A.2d 431 (1983). Subsection (3) states that the mortgagee must give notice of the exact amount to be tendered to cure the default. It says nothing about requiring a mortgagee to provide detailed formulas to allow a mortgagor to calculate the amount to be tendered over the next thirty days of the curing period. Rather, we read the plain language of subsection (3) as indicating that a mortgagee need only provide the amount to cure the default which has accrued as of the date of notice. Should a mortgagor be left with any questions regarding the amount due because of his or her continued default after the date of the notice, the mortgagee's inclusion of a phone

number to provide assistance sufficiently cures any potential notice defects.

■ Resolution of the instant matter turns on the degree of disclosure the legislature intended under section 403 notice provisions. A court interpreting a statute must ascertain and effectuate the intent of the legislature and give full effect to each provision of the statute if at all possible. 1 Pa.C.S.A. §§ 1921, 1922; *Consulting, supra.* Interpreting the words of the statute according to their common and accepted usage, we find that the trial court erred in its determination that the notice was deficient. The trial court's interpretation of section 403(c)(3) would effectuate a modification of the notice provisions that cannot be ascertained from the plain language of the Act. The legislature does not intend a result that is absurd and unreasonable. 1 Pa.C.S.A. § 1922; *Consulting, supra.* Instantly, we find that the legislature did not intend such unworkable and impracticable ramifications in passing the Act. Specifically, we find that the trial court's determination that the section 403 notice in the instant was case was deficient to be error.

Order reversed.